UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

In the Matter of:  Civil No. 13-1916 (JNE/JSM)
ORDER
Impac CMB Trust Series 2004-11

---

Michael M. Krauss and Michael F. Doty, Faegre Baker Daniels LLP, appeared for Wells Fargo Bank, National Association.

Myles K. Bartley, Curtis, Mallet-Prevost, Colt & Mosle LLP, and Erin Sindberg Porter, Greene Espel PLLP, appeared for Impac Mortgage Holdings, Inc.

---

Wells Fargo Bank, National Association, serves as indenture trustee for the holders of bonds issued by the Impac CMB Trust Series 2004-11 (Trust). As trustee, Wells Fargo Bank may have certain rights and duties related to the enforcement of loan repurchase claims against entities that transferred residential mortgage loans to the Trust or that breached representations or warranties related to the loans. After identifying a potential conflict of interest,[1] Wells Fargo Bank filed a petition under Minn. Stat. § 501B.16 (2012) in state court to seek the appointment of a separate trustee. Impac Mortgage Holdings, Inc., which the petition identified as a potentially responsible party, removed the petition from state court on the basis of jurisdiction conferred by 28 U.S.C. § 1332(a)(1) (2006 & Supp. V 2011). Asserting that Impac Mortgage Holdings had not satisfied its burden of demonstrating the requisite amount in controversy, Wells Fargo Bank moved to remand the case to state court. For the reasons set forth below, the Court grants Wells Fargo Bank's Motion to Remand.

A district court has original jurisdiction of a civil action where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of

---

[1] Separate divisions of Wells Fargo Bank may be subject to repurchase claims based on representations and warranties similar to those made by potentially responsible parties. No division or affiliate of Wells Fargo Bank sold loans to the Trust.

1

different states. 28 U.S.C. § 1332(a)(1). "[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." *Id.* § 1441(a). Under certain circumstances, a notice of removal may assert the amount in controversy:

> If removal of a civil action is sought on the basis of the jurisdiction conferred by section 1332(a), the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy, except that—
>
> (A) the notice of removal may assert the amount in controversy if the initial pleading seeks—
>
> (i) nonmonetary relief; or
>
> (ii) a money judgment, but the State practice either does not permit demand for a specific sum or permits recovery of damages in excess of the amount demanded; and
>
> (B) removal of the action is proper on the basis of an amount in controversy asserted under subparagraph (A) if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds the amount specified in section 1332(a).

*Id.* § 1446(c)(2).

"The proponent of diversity jurisdiction has the burden of proving that the amount in controversy exceeds the jurisdictional minimum." *Bell v. Hershey Co.*, 557 F.3d 953, 956 (8th Cir. 2009). "Where the defendant seeks to invoke federal jurisdiction through removal . . . it bears the burden of proving that the jurisdictional threshold is satisfied" by a preponderance of the evidence. *Id.* "This standard applies regardless of whether 'the complaint alleges no specific amount of damages or an amount under the jurisdictional minimum.'" *Id.* (quoting *In re Minn. Mut. Life Ins. Co. Sales Practices Litig.*, 346 F.3d 830, 834 (8th Cir. 2003)). "'In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation.'" *James Neff Kramper Family Farm P'ship v. IBP,*

*Inc.*, 393 F.3d 828, 833 (8th Cir. 2005) (quoting *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977)); *see Usery v. Anadarko Petroleum Corp.*, 606 F.3d 1017, 1018 (8th Cir. 2010) ("We have held repeatedly that in a suit for declaratory or injunctive relief the amount in controversy is the value to the plaintiff of the right that is in issue.").

Wells Fargo Bank moved to remand the case to state court on the ground that Impac Mortgage Holdings cannot demonstrate the requisite amount in controversy. Impac Mortgage Holdings responded that the amount in controversy exceeds $75,000 because "the appointment of [the separate trustee] is worth more than $75,000." According to Impac Mortgage Holdings, "[a] simple way to assess this value is to examine the fees expected to be earned by Wells Fargo and to examine the fees to be earned by [the separate trustee] in analyzing and pursuing the Repurchase Claims"; "it is realistic to presume that [the separate trustee's] fees . . . would be substantial"; and that "[w]hen added to the fees Wells Fargo will continue to receive as Indenture Trustee, those amounts exceed $75,000." Next, Impac Mortgage Holdings asserted that, "if the requested relief is granted, Wells Fargo will be cloaked by court order with protections from possible claims by bondholders related to Wells Fargo's conduct as Indenture Trustee"; that "[t]he relief sought in the Petition includes an order relieving Wells Fargo of its contractual obligations under the Indenture related to the prosecution of Repurchase Claims, while simultaneously retaining its position as Indenture Trustee for all other purposes"; and "the Court must . . . assess the value to Wells Fargo of being relieved of its contractual obligations to perform all of its duties and obligations as indenture trustee for this Trust." Finally, Impac Mortgage Holdings maintained that "the object of Wells Fargo's Petition is to facilitate Repurchase Claims by assuring that someone (other than Wells Fargo) investigates and then, if warranted, pursues those claims." Impac Mortgage Holdings concluded that "[t]he object of the

3

Petition thus puts at issue the $1.515 billion worth of mortgage loans originally conveyed to the Trust."

To support its arguments regarding the amount in controversy, Impac Mortgage Holdings deemed one case "instructive." That case, a Report and Recommendation that was summarily adopted, considered how to determine the amount in controversy in a suit that sought a declaration that an entity lacked authority to foreclose on the plaintiffs' residential properties. *Garland v. Mortg. Elec. Registration Sys., Inc.*, Civ. Nos. 09-71, 09-72, 09-342, 09-430, 2009 WL 1684424 (D. Minn. 2009). With respect to the issues raised in Wells Fargo Bank's motion, the Court does not find *Garland* to be instructive.

Impac Mortgage Holdings has not identified any authority that supports its measurement of the amount in controversy, and the Court has found none. Neither the fees that the separate trustee might earn nor the fees that Wells Fargo Bank will earn as trustee measure the amount in controversy. *Cf.* 14AA Charles Alan Wright et al., *Federal Practice and Procedure* § 3702.5 (4th ed. 2011) ("It is well-settled by numerous judicial decisions by the Supreme Court, the courts of appeals, and countless district courts, as demonstrated by the copious illustrative citations in the note below, drawn from various areas of substantive law, that the amount in controversy for jurisdiction purposes is measured by the direct pecuniary value of the right that the plaintiff seeks to enforce or protect or the value of the object that is the subject matter of the suit. Quite naturally, what elements this embraces will depend on the circumstances of each case. A very important corollary to the measurement principle is that whatever the collateral effects a decree or judgment might have by virtue of stare decisis, collateral estoppel, or any other impact on the rights or interests of third parties, those consequences cannot be taken into account in calculating the amount in controversy." (footnote omitted)). Nor do the protections

that Wells Fargo Bank might enjoy from certain claims that bondholders might bring measure the amount in controversy. *Cf. id.* Finally, Wells Fargo Bank's petition does not put "at issue the $1.515 billion worth of mortgage loans originally conveyed to the Trust." *Cf. In re Corestates Trust Fee Litig.*, 39 F.3d 61, 66 (3d Cir. 1994) ("The mere request for removal of a trustee does not place the entire trust corpus into controversy . . . .").

In short, Impac Mortgage Holdings has not satisfied its burden of demonstrating the requisite amount in controversy. The Court therefore grants Wells Fargo Bank's motion and remands this action to state court. *See* 28 U.S.C. § 1447(c) (2006) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.").

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Wells Fargo Bank's Motion to Remand [Docket No. 13] is GRANTED.

2. This case is REMANDED to the Fourth Judicial District of the State of Minnesota.

3. The Clerk of Court shall mail a certified copy of this Order to the clerk of the Fourth Judicial District of the State of Minnesota.

Dated: October 18, 2013

s/Joan N. Ericksen  
JOAN N. ERICKSEN  
United States District Judge